UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Nicole Yzaguirre, | Civil No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR INJUNCTION AND DAMAGES** |
| Eric Norling, in his individual capacity, | **JURY TRIAL DEMANDED** |
| Defendant. | |

_____

Plaintiff for her complaint alleges:

## PARTIES

1. Nicole Yzaguirre ("Plaintiff") is a resident of Hennepin County, Minnesota.

2. Defendant Eric Norling is a police detective with the Bloomington Police Department, Bloomington, Minnesota. He is sued in his individual capacity.

## JURISDICTION

3. Pursuant to 28 U.S.C. §1331, this Court has original jurisdiction over this matter, which arises under the laws of the United States including 42 U.S.C. §1983.

## FACTUAL STATEMENT

4. Plaintiffs works at a big box store, and while working in the financial department in summer 2010, a person cashed a check. Initially, Plaintiff was fired following cashing the check, but when she pointed out that she had followed company policy, and following the store's own investigation, she was re-hired.

5. After Plaintiff began work, two law enforcement officers came to the store, and questioned her about the same incident the store had already investigated. She spoke with them, and described her limited role in the check cashing, and limited knowledge. Defendant Norling took her cell phone and started looking through it, without a warrant or consent.

6. Detective Norling was pressuring Plaintiff to "cooperate" with him, and continued to press her for the name of someone she did not know.

7. Norling began to contact Plaintiff's mother, asking that she produce cell phone records and text messages.

8. Norling wanted Plaintiff to produce herself at the police station, voluntarily, to give him a statement, and to produce cell phone records and text messages. Norling spoke of a noon (or 12:30) meeting time, but confirmed that he was flexible about date and time.

9. On August 31, 2010, Plaintiff retained a private criminal defense attorney, who telephoned Detective Norling, asking about the status of the case. Norling confirmed that there were no criminal charges pending. (Private attorney also telephoned the Hennepin County Attorney's Office, which also confirmed there were not charged pending.) Norling confirmed that Plaintiff was under no compulsion to come to the police station that day, and that it was completely voluntary.

10. On behalf of Plaintiff, private attorney notified Detective Norling that Plaintiff was exercising her Fifth Amendment right to remain silent, and her Sixth

Amendment right to counsel. Detective Norling terminated the conversation by hanging up on private attorney.

11. Shortly thereafter, and also on August 31, 2010, private attorney wrote a and transmitted a fax memorandum to Detective Norling, copy to the Hennepin County Attorney's Office, in which, as agent for Plaintiff, which:  a) cautioned that Norling should not arrest Nicole as a pretext to gain physical possession of her cell phone; b) formally asserted Plaintiff's Fifth and Sixth Amendment rights, and cautioned Norling *not* to try to talk to Plaintiff, but to contact her attorney; c) cautioned Norling not to interfere with Plaintiff's job; d) notified Norling that private attorney would accept service of a written complaint (there was no need to custodially arrest Plaintiff, even if there was a written criminal complaint signed by a judge; and e) cautioned Norling  not to retaliate against Plaintiff for the exercise of her constitutional rights.

12. Plaintiff ha a First Amendment right to freedom of expression to exercise her Fifth and Sixth Amendment rights under the U.S. Constitution.

13. Within hours of the fax memorandum described above, Detective Norling went to Plaintiff's work, cuffed her, and purposely walked her out of the store in front of her managers, her co-workers, and purposely avoiding an easier exit that would not have been so public.

14. Norling spent time talking to personnel from the store, and Plaintiff was not privy to that conversation.

15. When he arrested Plaintiff, he confirmed that she was being arrested because she did not come to her "appointment" with him.  He stated words to the effect

3

of, "you are grown enough to be able to call on your own and tell me you were not coming or to re-schedule;" and "you are grown enough to deal with me directly and not through your Mom or an attorney."

16.     Despite express notification and warning of Plaintiff's exercise of Fifth and Sixth Amendment rights, Detective Norling talked directly with Plaintiff, and asked her questions.  He specifically asked Plaintiff why she had not come to her appointment.  He specifically stated that things would go better for Plaintiff if she did not have an attorney, and he specifically asked Plaintiff if she would be willing to speak to him, or was she going to insist of involving her attorney.  Plaintiff stated that she was going to involve her attorney.

17.     Detective Norling drove Plaintiff to the Bloomington Police Station, where she was put into a locked cell and not free to leave.

18.     Norling failed to notify Plaintiff's attorney, and again attempted to circumvent her attorney and question Plaintiff directly.

19.     Detective Norling commented that he did not gain physical possession of Plaintiff's phone by arresting her.

20.     Norling harassed Plaintiff by making statements like, "I was trying to keep this private, but now it's going to be public and everyone is going to know;" "did you think I was going to let this go, that I wasn't going to come find you?" "

21.     Norling then released Plaintiff: she was not taken to jail.  There are no pending charges.  Bloomington took involuntary pictures of Plaintiff, her fingerprints, and Norling tried to get a statement from her.  There was no purpose for the "booking;"

4

there are no pending charges.  And, Norling was far from sure that there would ever be (he made comments such as needing to talk to an officer from another jurisdiction, to see where he wanted to "go with this").

22. Due to the humiliating and malicious custodial arrest inside her workplace, Plaintiff cannot now return to work.

## COUNT I

### Violation of 42 U.S.C. §1983
### (Against all Defendants)

Plaintiff realleges all foregoing information as if fully set forth herein.

23. Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

24. This claim arises under Title 42 of the United States Code (Civil Rights Act of 1964, as amended), including but not limited to §1983.

25. Defendant deprived Plaintiff of her rights, privileges, and immunities secured by the United States Constitution, and specifically the Fourteenth Amendment to the United States Constitution, in conjunction with other rights, including but not limited to the following clearly established rights:

   a. **First Amendment**.  Detective Norling retaliated against Plaintiff for expressing (either directly or through her agent) her rights under the Fifth and Sixth Amendments to the U.S. Constitution.  Norling retaliated by (but not limited to): i) custodially arresting Plaintiff, only to take her to the station, the release her (that is, for no legitimate purpose); ii) by purposely parading Plaintiff by her co-workers and managers (rather than exiting through a closer door that would have been less public); iii) intentionally interfering with Plaintiff's job, workplace and livelihood.  Norling did these things are having been specifically cautioned not to retaliate against Plaintiff for the exercise of

5

her rights.  Norling directly confirmed to Plaintiff, that he had arrested her for her exercise of rights (her decision not to voluntarily visit him, give him a statement, give him cell phone records or text messages, and the communication of that right), by telling her that he had arrested her because she did to come to her appointment.  Norling directly confirmed that that he was retaliating against Plaintiff for her expression of her Sixth Amendment right, when he repeatedly tried to question Plaintiff outside the presence of her attorney, and when he told Plaintiff that she was grown enough to deal with him directly, and not through her attorney.

26. Defendant knew he was violating the federal law and constitutional rights of Plaintiff and/or acted with intent and/or deliberate indifference to the rights of Plaintiff as noted above, or with malice.  The Defendant acted under color of law (while an on-duty police officer) of a statute, ordinance, regulation, resolution, policy, custom or usage when he deprived Plaintiff of her Constitutional rights, privileges, and immunities.

27. By reason of the foregoing, Plaintiff is entitled to a negative injunction against Defendant, prohibiting him from arresting her for no reason (that is, arresting her to try to get her to talk to him, to try to get her phone, just to take her picture and fingerprint her, etc.), prohibiting him from interfering with Plaintiff at her place of work.

## COUNT II
### Intentional Interference with Contract

Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

28. A valid contract existed between Plaintiff and her employer. Defendants knew about Plaintiff's employment contract.  Defendant intentionally induced the breach of the contract and/or intentionally induced Plaintiff's employer to refuse to perform its contract with Plaintiff.  Defendant's actions were not justified.  Defendant was successful in interfering

6

with Plaintiff's employment: the "arrest" policy of employer requires that Plaintiff not return to work at this time.

29.     As a direct and proximate result of defendant's intentional defamation of Plaintiff, Plaintiff has suffered, and continues to suffer damages and other harm in a reasonable amount in excess of $50,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief in the form of an injunction against Defendant and/or as follows:

1.    Judgment in a reasonable amount in excess of $50,000, and including but not limited to compensatory, presumed and punitive damages (Plaintiff reserves the right to bring a motion to add punitive damages to state-law claim);

2.    Interest on the aforesaid amounts;

3.    Awarding to Plaintiff her reasonable attorney fees and costs and disbursements incurred herein (including special damages of attorney fees for state criminal prosecution); and

4.    Issuing a temporary and/or permanent prohibitory injunction prohibiting further abuses by Defendant, as discussed in Count I.

*\*\*\**

Plaintiff hereby demands a trial by jury on all applicable Counts. Plaintiff reserves the right to amend to add a claim for punitive damages under State law.

Dated:  August 31, 2010                **ATTORNEYS FOR PLAINTIFF**
                                       **JILL CLARK, P.A.**

                                       s/jillclark
                                       _____
                                       By:  Jill Clark, Esq. (#196988)
                                       2005 Aquila Avenue North
                                       Minneapolis, MN 55427
                                       (763) 417-9102